IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

BRANDON L. MCKEEL,

                Plaintiff,

  v.                                                                                        OPINION and ORDER

STATE OF FLORIDA COUNTY OF LEE, STATE OF
FLORIDA DEP'T OF CORR., PRISONER TRANS.                      23-cv-73-jdp
SERVS. OF AM. LLC, WIS. DEP'T OF CORR.,

                Defendants.

---

Plaintiff Brandon L. McKeel has filed a complaint and a motion for emergency injunctive relief, alleging that he has received inadequate medical care for chronic lower back problems and associated pain and cannot physically tolerate his imminent extradition by van to Florida. Given the urgency of McKeel's allegations, I gave the Wisconsin Department of Corrections (DOC) a short time to file a response explaining what is being done to address them. The DOC has filed its response and supporting evidence. I will screen McKeel's complaint and rule on McKeel's emergency motion in this order.

The court granted McKeel's motion to proceed in forma pauperis. Because McKeel proceeds in forma pauperis, I must screen the complaint under 28 U.S.C. § 1915(e)(2)(B). I must dismiss any portion of the complaint that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks money damages from an immune defendant. I must accept the complaint's allegations as true and construe them generously, holding the complaint to a less stringent standard than one a lawyer drafts. *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). I will dismiss the complaint for failure to state a claim upon which relief may be granted but allow McKeel to amend his complaint to correct this deficiency. Also, having

reviewed the DOC's response and supporting evidence, I will deny McKeel's emergency motion.

ALLEGATIONS OF FACT

I draw the following allegations from the court's February 24 order, *see* Dkt. 7, which summarizes the allegations in McKeel's complaint for injunctive relief and emergency motion.

McKeel is incarcerated at New Lisbon Correctional Institution (NLCI). McKeel alleges that he has severe back problems after spinal fusion surgery, including nerve pain, muscle spasms, and the inability to sit for more than 30 minutes. McKeel also alleges that he will be extradited to Florida by van on March 12, 2023, and that he will not be able to sit for hours at a time over two weeks as the trip will demand. McKeel adds that DOC officials have disregarded his requests for physical therapy, steroid injections, and other medical treatment for months.

THE DOC'S RESPONSE

The DOC supported its response with McKeel's medical records and the declaration of Art Hyzer, McKeel's physical therapist. *See* Dkt. 9; Dkt. 10; and Dkt. 11.

McKeel was transferred to NLCI on July 19, 2022. Dkt. 9 at 2. McKeel has been diagnosed with lower back pain, lower back muscle spasms, and lumbosacral nerve root pain. *See* Dkt. 10-1 at 1–2. After a car accident several years ago, McKeel had spinal fusion surgery. *See id.* at 23, 25.

Two days after he arrived at NLCI, Registered Nurse Nicholas Floyd evaluated McKeel. *See id.* at 20. McKeel reported that he had back pain and had successfully used Gabapentin

(an anticonvulsant used to treat nerve pain), Baclofen (a muscle relaxer), Cyclobenzaprine (a muscle relaxer), and steroid injunctions to treat his pain. *Id.* at 21. Floyd ordered Tylenol 650 mg four times a day for three days and noted that McKeel could purchase additional Tylenol from the canteen. *Id.* at 22. Floyd also requested a low bunk restriction and an evaluation by a provider. *Id.*

Approximately three weeks later, Advanced Nurse Practitioner Wendy Demler evaluated McKeel. *See id.* at 25. Demler ordered Amitriptyline 25 mg (an antidepressant and nerve pain medication), Baclofen 10 mg three times a day for 21 days, and "Prednisone (a corticosteroid used to treat inflammation) 60mg – 5mg . . . as a taper/burst daily . . . every three days[] for two weeks." Dkt. 9 at 3; Dkt. 10-1 at 25–26. Demler also referred McKeel for physical therapy and noted that his low bunk restriction needed to continue. Dkt. 10-1 at 25.

Shortly over a month later, Registered Nurse Lisa Payne evaluated McKeel's complaint of increased back pain after he stopped taking Prednisone. *See id.* at 23. McKeel reported that his Baclofen worked well but that he wished to take it as needed. *Id.* Payne spoke with Demler, who asked for McKeel to be added to her schedule. *Id.*

Demler evaluated McKeel 24 days later. *See id.* at 28. McKeel reported that he did not want to take Tylenol, Ibuprofen, or Amitriptyline and expressed a preference for Cyclobenzaprine and Biofreeze (an anti-inflammatory topical gel). *See id.* Demler placed a "[n]onformulary drug request" for McKeel's preferred medications. *Id.* Four days later, Dr. Daniel L. LaVoie, the medical director, denied both medications. *Id.* at 60; Dkt. 10-2 at 4–5. LaVoie denied the Cyclobenzaprine for long-term use because McKeel had "met the DOC limit for short[-]term use." Dkt. 10-2 at 5.

3

A little under two months later, Demler evaluated McKeel for continued lower back pain. Dkt. 10-1 at 23. Demler ordered a steroid pack and Capsaicin topical (a gel to treat nerve pain), and reordered physical therapy. *See id.* Demler noted that McKeel used a Transcutaneous Electrical Nerve Stimulation (TENS) unit and that it helped but did not resolve his pain. *Id.* Demler ordered McKeel to continue using Ibuprofen and the TENS unit and stated that she would talk to a pharmacist about prescribing Baclofen "for 5 days every other week" to fall within the limit for short-term use. *See id.* at 23–24.

Demler evaluated McKeel approximately two weeks later. McKeel reported that the steroid pack was ineffective and that the TENS unit and Capsaicin provided only short-term relief for his pain. *Id.* at 26. Demler prescribed Baclofen 20 mg for five days, Prednisone 40 mg for seven days, and an extra pillow "for positioning to help treat back pain." *Id.* at 27. Demler also ordered McKeel to continue using the TENS unit, Capsaicin, and Ibuprofen. *Id.*

A little over a month later, Payne evaluated McKeel. *Id.* at 18–19. McKeel reported that his steroid pack was largely unsuccessful but that he had recently used Prednisone 40 mg and Baclofen with some short-term success. *See id.* at 19. Dr. Ledesma gave McKeel verbal orders for Prednisone 40 mg and Baclofen as Demler previously ordered. *Id.* at 20; Dkt. 10-2 at 4.

Three days later, McKeel expressed doubt that he could physically tolerate being extradited to Florida in a van and asked for a medical evaluation to "have medical proof to ask for another form of transportation." Dkt. 10-2 at 20–21. Registered Nurse Eric L. Nysse evaluated McKeel two days later. Dkt. 10-1 at 14–15. McKeel complained of back pain and knots if he sat in one position for too long. *Id.* at 15. Nysse noted that McKeel was on Baclofen, Prednisone, and Ibuprofen and asked him if he wanted Tylenol. *Id.* at 18. McKeel said "no" and reported that the Ibuprofen was ineffective. *Id.* According to Nysse, McKeel declined to

4

"discuss any medications or muscle stretching" and was "solely focused on finding someone to give him an order to fly to Florida." *Id.* Nysse consulted with the Health Services Unit (HSU) manager and noted that transportation was "not a[n] HSU issue." *Id.*

Approximately two weeks later, Hyzer evaluated McKeel. *See id.* at 48–49; Dkt. 11 ¶ 6. Hyzer declares that he "recommended stretching and strengthen[ing] through the use of a Home Exercise Plan [HEP] and ordered a comfort form supportive back brace." Dkt. 11 ¶ 6. Hyzer evaluated McKeel 11 days later and noted that he understood the HEP and "demonstrated decreased pain to 6/10 following treatment." Dkt. 10-1 at 55; Dkt. 10-2 ¶ 6.

Two days later, Registered Nurse Christine Holmen evaluated McKeel, who complained that he could not "sit/sleep sitting up in a metal cage" while "being transported to Florida via van." Dkt. 10-1 at 10. Holmen noted that McKeel could ambulate well and sit and stand from a chair. *Id.* at 11. McKeel asked for his medications prior to extradition and Dr. Ledesma denied the request "at this time." *Id.* at 12.

A day later, Hyzer evaluated McKeel. Dkt. 10-2 at 34. McKeel reported that he was following his HEP, using his back brace, and trying to get more Prednisone because that helped him a lot. *Id.* McKeel added that extended sitting increased his pain to "maximal levels even with the prescribed pain meds." *Id.* at 34–35. Hyzer reviewed the HEP with McKeel and ensured that he understood it. *Id.* at 35. Hyzer noted that McKeel "demonstrated minimal decrease in pain following treatment" but was "safe for travel." *Id.* at 35. Hyzer added that it was advisable for McKeel to stop "at least every two 2 hours to stretch [his] back and move/walk around" and that "[f]aster modes of travel (such as air travel) are more advisable to decrease the amount of time [McKeel] has to be in a seated position." *Id.* Hyzer declares that "[t]here is no bodily harm that will result from traveling." Dkt. 11 ¶ 7.

The following day, Holmen directed Ledesma to order Flexeril (a muscle relaxer) 10 mg three times a day for seven days after McKeel told Holmen that his medication was not helping him and that he was having back spasms. *See* Dkt. 9 at 6; Dkt. 10-1 at 22.

The DOC contends that the Juneau County Sheriff "will be picking up Mr. McKeel from DOC custody on March 12, 2023." Dkt. 9 at 1. McKeel has an extradition hearing scheduled for March 20, 2023, at the Juneau County Justice Center.[1] The DOC adds that there "will be no DOC supervision remaining upon McKeel's release from DOC's custody on March 12." Dkt. 9 at 2.[2]

ANALYSIS

**A. Screening the complaint**

McKeel sues the Florida Department of Corrections (FDOC), Lee County, Florida, and Prisoner Transportation Services of America LLC (Prisoner Transportation LLC). McKeel seeks injunctive relief only. The DOC is not named in the complaint's caption but is listed on docket as an interested party.

The FDOC, as an "arm" of the state of Florida, is not a proper defendant in an action under 42 U.S.C. § 1983. *See O'Connor v. RMC,* No. 3:15-CV-1387-J-32JBT, 2015 WL 13854724, at *2 (M.D. Fla. Dec. 2, 2015); *see also Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 69 (1997) (stating that "§ 1983 actions do not lie against a State"). In an appropriate case,

---

[1] *See* https://wcca.wicourts.gov/caseDetail.html?caseNo=2023CF000043&countyNo=29&index=0&mode=details.

[2] *See also* https://appsdoc.wi.gov/lop/details/detail (stating that McKeel's maximum discharge date is March 12, 2023).

6

McKeel could seek injunctive relief from an FDOC or other state official by suing him in his official capacity. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989) ("[A] state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the State."). But McKeel has not alleged that any FDOC official knows about his back problems and can authorize accommodations for prisoners being extradited by van from other states or alternative transportation. So McKeel has not alleged a basis for liability for inadequate medical care against any FDOC official. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (the Eighth Amendment prohibits prison officials from consciously disregarding the serious medical needs of prisoners).

I will not allow McKeel to proceed against Lee County because McKeel has not alleged that any Lee County official has violated his federal rights. *See Swanigan v. City of Chicago*, 775 F.3d 953, 962 (7th Cir. 2015) ("If the plaintiff fails to prove a violation of his constitutional rights in his claim against the individual defendants, there will be no viable . . . claim [against the county] based on the same allegations."). Again, McKeel has not alleged that any Lee County official knows about his back problems and can accommodate them. In any case, McKeel has not alleged that Lee County has a policy or custom that caused any conscious disregard of his medical needs. *See Montano v. City of Chicago*, 535 F.3d 558, 570 (2008). Similarly, I will not allow McKeel to proceed against Prisoner Transportation LLC because he has not alleged that any of its employees consciously disregarded his medical needs or that it has a policy or custom that caused McKeel's medical needs to be disregarded. *See Glisson v. Ind. Dep't of Corr.*, 849 F.3d 372, 378–79 (7th Cir. 2017).

McKeel alleges that NLCI officials provided him with inadequate medical care. But he has not identified any of these officials, *see Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017), or named any of them as defendants in the complaint's caption, *see Myles v. United States*, 416 F.3d 551, 551 (7th Cir. 2005). So I will not allow McKeel to proceed against any NLCI official.

McKeel has failed to state a claim for inadequate medical care. But I will allow him to amend his complaint to fix this problem and give him instructions on how to do that at the end of this order.

## B. Motion for preliminary injunction

I will treat McKeel's motion for emergency injunctive relief as a motion for preliminary injunction, rather than as a motion for a restraining order, because McKeel did not file an affidavit or verified complaint. *See* Fed. R. Civ. P. 65(b)(1)(A). This designation does not prejudice McKeel because "the standard for determining whether either form of relief is appropriate is the same." *Democratic Nat'l Comm. v. Bostelmann*, 447 F. Supp. 3d 757, 765 (W.D. Wis. 2020). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). A likelihood of success on the merits requires only a "better than negligible chance of succeeding on the merits." *Hoban v. Wexford Health Sources, Inc.*, 731 F. App'x 530, 532 (7th Cir. 2018).

To establish a violation of the Eighth Amendment for inadequate medical care, McKeel must show that he had an objectively serious medical condition and that the prison official consciously disregarded that condition. *See Cesal v. Moats*, 851 F.3d 714, 721 (7th Cir. 2017).

consciously disregarded that condition. *See Cesal v. Moats*, 851 F.3d 714, 721 (7th Cir. 2017). An objectively serious medical need is one that has been diagnosed by a physician as mandating treatment, or is so obvious that even a lay person would easily recognize the need for a doctor's attention. *Id.*

The DOC's evidence shows that McKeel has objectively serious chronic lower back problems and associated pain. So the issue is whether McKeel has a better than negligible chance of showing that defendants or NLCI officials have consciously disregarded this medical condition.

To prove that the prison official has consciously disregarded the serious medical condition, McKeel must show "that the official actually knew of, but disregarded, a substantial risk to [his] health." *Id.* Conscious disregard involves intentional or reckless conduct, not mere negligence. *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010). A prisoner's "mere disagreement with a doctor's medical judgment is not enough to support an Eighth Amendment violation." *Cesal*, 851 F.3d at 722.

McKeel's allegations do not suggest that he has a better than negligible chance of showing that defendants have consciously disregarded his lower back problems. McKeel has not alleged that defendants have ordered his extradition to Florida by van or that they know about his medical problems and can grant his preference for an accommodation or alternative transportation. I cannot order a preliminary injunction against defendants when McKeel has yet to state a claim for inadequate medical care against them.

Nor does McKeel have a better than negligible chance of showing that NLCI officials consciously disregarded his lower back problems. The DOC's evidence shows that medical staff has evaluated McKeel for this medical condition at least 11 times since he arrived at NLCI in

9

July 2022. McKeel received a variety of medication, treatments, and accommodations, including nerve pain medication, pain relivers, steroids, physical therapy, a back brace, a low bunk restriction, and an extra pillow. The evidence shows that McKeel "was under active treatment; no one was ignoring him." *See id.* 723; *see also Estelle*, 429 U.S. at 107 (rejecting claim for inadequate medical care when medical staff saw prisoner 17 times over three months, diagnosed his lower back strain, and treated it with bed rest, muscle relaxants, and pain relievers). McKeel may prefer different medication, but his mere disagreement with medical staff does not show conscious disregard of his lower back problems.

Dr. Ledesma initially denied McKeel's request for medication prior to extradition. *See* Dkt. 10-1 at 12. But Ledesma later ordered Flexeril for McKeel's back spasms. *See* Dkt. 9 at 6; Dkt. 10-1 at 22. If McKeel needs medication to tolerate van travel to Florida, the record does not indicate at this time that NLCI officials will refuse to provide it.

In any case, NLCI officials will not be responsible for providing any necessary medication for the trip. McKeel will enter the custody of the Juneau County Sheriff's Office on March 12. Contrary to McKeel's contention, his van trip won't start on March 12 because his extradition hearing is scheduled for March 20. If a Juneau County judge orders McKeel's extradition to Florida by van, McKeel will have to ask officials at the Juneau County Jail or the judge to receive medication during the trip. NLCI officials will not be responsible for McKeel's medical care at that point.

McKeel has not shown that he is likely to suffer irreparable harm in the absence of preliminary injunctive relief. McKeel wants to be extradited to Florida by airplane instead of van largely because he "cannot withstand sitting for more than 30 minutes." Dkt. 1 at 1. But air travel will involve significant periods of sitting as well, certainly more than 30 minutes.

In any case, NLCI officials will not be responsible for providing any necessary medication for the trip. McKeel will enter the custody of the Juneau County Sheriff's Office on March 12. Contrary to McKeel's contention, his van trip won't start on March 12 because his extradition hearing is scheduled for March 20. If a Juneau County judge orders McKeel's extradition to Florida by van, McKeel will have to ask officials at the Juneau County Jail or the judge to receive medication during the trip. NLCI officials will not be responsible for McKeel's medical care at that point.

McKeel has not shown that he is likely to suffer irreparable harm in the absence of preliminary injunctive relief. McKeel wants to be extradited to Florida by airplane instead of van largely because he "cannot withstand sitting for more than 30 minutes." Dkt. 1 at 1. But air travel will involve significant periods of sitting as well, certainly more than 30 minutes. McKeel contends that van travel will take two weeks, but he admits that the two-week trip will involve several "stops." *See id.* at 2. At each stop, McKeel should be able to stand, walk around, lie down, and practice his HEP. I will accept for purposes of this motion that air travel will "decrease the amount of time [McKeel] has to be in a seated position" and be more comfortable him overall. *See* Dkt. 10-2 at 35. But, on this record, it is speculative to infer that McKeel will be able to physically tolerate air travel only and that van travel will cause him irreparable harm. *See E. St. Louis Laborers' Loc. 100 v. Bellon Wrecking & Salvage Co.*, 414 F.3d 700, 704 (7th Cir. 2005) ("[S]peculative injuries do not justify th[e] extraordinary remedy [of preliminary injunctive relief]."); *see also Winter*, 555 U.S. at 22 ("Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.").

11

McKeel has not shown an entitlement to preliminary injunctive relief. I need not hold an evidentiary hearing because the DOC submitted McKeel's relevant medical history and it is clear that McKeel cannot satisfy the test for a preliminary injunction at this time.

**C. Instructions on filing amended complaint**

Because McKeel will be released from DOC custody on March 12, his injunctive relief claims may become moot before he can file an amended complaint. But McKeel has asked the clerk for a § 1983 complaint form, Dkt. 1-1 at 1, indicating his desire to file an amended complaint. And McKeel may want to seek damages in his amended complaint, which he can do even if his injunctive relief claims become moot before he files it. So granting McKeel leave to amend is not necessarily futile. *Cf. Donald v. Cook Cty. Sheriff's Dep't*, 95 F.3d 548, 555 (7th Cir. 1996) ("[D]istrict courts have a special responsibility to construe *pro se* complaints liberally and to allow ample opportunity for amending the complaint when it appears that by so doing the pro se litigant would be able to state a meritorious claim.").

In drafting his amended complaint, McKeel should remember to do the following:

- Carefully consider whether he is naming proper defendants and omit defendants who did not personally participate in, or otherwise cause, a violation of federal law.
- Identify by full name all the individuals or entities he wishes to sue in the amended complaint's caption.
- Omit legal arguments other than explaining what types of claims he wishes to assert.

If McKeel enters the custody of the Juneau County Sheriff's Office and a judge orders his extradition, and if McKeel believes that he will suffer irreparable harm absent preliminary

12

injunctive relief, McKeel will have a choice. McKeel may file a new civil rights action seeking such relief. Alternatively, McKeel may seek to file an amended complaint and a new motion for preliminary injunction in this case.

ORDER

IT IS ORDERED that:

1. Plaintiff Brandon L. McKeel's motion for an emergency injunction and expedited evidentiary hearing, Dkt. 3, is DENIED.

2. Plaintiff may have until April 6, 2023, to submit an amended complaint that corrects the above deficiencies.

3. Plaintiff must file his amended complaint on the court's prisoner complaint form, which the court will send him with this order. Plaintiff must fill out the form completely. If plaintiff requires any additional space to allege his claims, he may submit no more than five supplemental pages.

4. If plaintiff fails to comply with this order, I may dismiss the case.

5. It is plaintiff's obligation to inform the court of any new address. If he fails to do this and defendants or the court are unable to locate him, his claims may be dismissed for his failure to prosecute them.

6. The clerk of court is directed to send plaintiff copies of this order and the court's prisoner complaint form.

Entered March 7, 2023.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge